# ABRAM K. SEAVER

# v.

# FRANCIS H. COBB.

*Filed at Springfield March 21, 1881.*

1. TAX TITLE—*who may acquire—as to party in possession.* A party may lawfully purchase a tax title on land, acquired while he was in possession of the same, when he has no claim of title to the land when the taxes mature and the sale is made, and may assert the same against any one who assails his possession.

2. There is a class of cases where the person in possession is not allowed to obtain any benefit by such a purchase, such as a tenant holding a lease, or a purchaser in possession under a contract for a deed, or a mortgagor. In such cases the party will be estopped from purchasing a tax title he has allowed to accrue while in possession, and thus defeat the title of the person under whom he holds.

APPEAL from the Circuit Court of Perry county; the Hon. GEORGE W. WALL, Judge, presiding.

Mr. L. H. HITE, for the appellant:

When a party holds such a relation to. land or its owner that it is his duty to pay the taxes, he can not allow the land to be sold for taxes and become the purchaser, and thus defeat the title of the owner. Burroughs on Tax. 352.

Mere possession of the land when the tax for which it is sold is assessed, does not prevent the party from purchasing, but if the party in possession claims title to the land or some interest therein, he can not purchase. Ibid; *McMinn* v. *Whelan*, 27 Cal. 300; *Lacy* v. *Davis*, 4 Mich. 152.

Mr. C. W. THOMAS, for the appellee, contended that the appellee, who neither owned nor claimed to own the land, but who was in possession under a claim that it was government land, not subject to taxation, had no duty to the State or to any person to pay the taxes and could therefore have bought himself at the sale for taxes in 1870, and consequently it was competent for him to buy the tax title from Bonham, citing Blackwell on Tax Titles, 470; *Voris* v. *Thomas*, 12 Ill. 442; *Glancy* v. *Elliott*, 14 id. 456; *Blakely* v. *Bester*, 13 id. 708.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of ejectment, for the recovery of a tract of land in St. Clair county. The venue was changed, by agreement, to Perry county. On the 7th day of May, 1880, a trial was had in that court, by the court, a jury having been waived by the parties, when the court found the issues for the plaintiff, and rendered judgment in his favor, and awarded a writ of possession. Thereupon defendant prayed and perfected an appeal, and the case came to this Division by agreement of the parties.

The evidence shows, that appellee entered into possession of the land in 1866, under the supposition that it belonged to the general government. He attempted to enter it under some Indian scrip issued by Congress. But the officers of the land office rejected the application. Appellee introduced and read in evidence, the collector's notice of application for judgment against this land at the June term, 1870, a judgment against the land for taxes, affidavit to the delinquent list, a precept, a certificate of purchase of the land to M. M. Bonham, the affidavit of the agent of Bonham of the service of notice on Cobb, who was in possession, of the purchase for taxes, and to redeem, etc. Also receipt for taxes of 1870 and 1871. A deed from the collector to Bonham, under the tax sale, dated the 18th of October, 1872. Also a deed from Bonham to appellee, dated the 1st of June, 1873, to Cobb for the land in dispute. Appellant offered no evidence. No exceptions were taken to the admission of this evidence.

It is urged as ground of reversal, that appellee, being in possession, was bound to pay all taxes levied on the land, and failing to do so, he could not acquire title by purchasing the tax title from Bonham. It is not disputed that the land was delinquent for the taxes for the year 1869, for which the land was sold. Nor is it denied that the State had ample power to make the sale, or that Bonham, the purchaser at the tax sale, was fully competent to purchase, and receive a tax deed. The regularity or validity of any step taken by the revenue officers, from the assessment of the land for taxes till the delivery of the tax deed to the purchaser, was not disputed. All of these proceedings stand unquestioned, and as no objection was raised, we must regard all irregularities, if any exist, as being waived. Nor are we called on to determine if omissions of legal requirements by those engaged in the collection of taxes are cured by the 191st section of the Revenue law. The only question we are called upon to determine is, whether appellee was estopped

by any rule of law or public policy from purchasing the tax title from Bonham.

The question of whether appellee was precluded from purchasing at the tax sale when he was in possession, for the taxes that had accrued whilst he was thus in possession, is not before us, but whether he had the right to purchase from Bonham after his purchase was perfected by a tax deed, and thus unite it with and protect his possession, is urged for decision. It is undoubtedly the policy of the law, that all taxes should be collected, and it is the duty of the owner to pay the taxes levied on his property. But when the public has received all taxes imposed on the property, what further interest can it have in the matter? Public policy is then fully subserved. The tardy tax-payer has done nothing that deserves punishment or the creation of disabilities. Then why inflict them? See Cooley on Taxation, p. 350-1. Can it be that a person, by mistake or accident failing to pay taxes on his farm, and it is purchased by another, who acquires a deed, is precluded by public policy or any rule of law from receiving a conveyance from the purchaser or his assignees? Must such a title remain outstanding beyond the power of the former owner to remove or extinguish it? Does the law impose such penalties and disabilities for such accidents, mistakes, or even for gross inattention or neglect? The law is intended to be reasonable and just in all of its requirements, but such a rule would be harsh in the extreme and palpably unjust.

There is a class of cases where the person in possession is rightfully prevented from obtaining any benefit by such a purchase. A tenant holding a lease, a purchaser in possession under a contract for a deed, or a mortgagor, is estopped from so purchasing as to affect the title of the persons under whom they hold.

In cases where persons hold fiduciary relations it would be inequitable and unjust to permit them, when thus in possession, to acquire a tax title that would defeat the claim of the

vendor, the landlord, mortgagee, or *cestui que trust.* This rule of *estoppel in pais* is illustrated by the cases of *Voris* v. *Thomas,* 12 Ill. 442; *Glancy* v. *Elliott,* 14 id. 456, and others in this court. But between the rule announced in these cases, and the facts of this case, there is a broad distinction. This case depends on other and different principles.

In this case appellee was in fiduciary relations with no one. He had done no act that imposed the duty on him to protect the title for any one. He was simply in possession, but claimed no title, but on the contrary was asserting that the title was in the general government, and was endeavoring to purchase title of the government. He, if in under any one, claimed it to be the general government, and it was under no duty to pay taxes, nor was appellee under any obligation to perform any duty to the general government in connection with the land. Then to whom did he owe the duty of paying the tax? If to any one, it was the State and municipalities levying and entitled to receive the taxes. And they obtained them by the sale of the lands. They have no farther claim or concern with the land, its title, ownership or possession. Then what rule of law, of morals, or public policy, has appellee violated by purchasing and receiving a conveyance from Bonham of his tax title? We are unable to perceive any omission of duty on his part.

If he had claimed to be the owner, it would no doubt have been his duty to pay the taxes, but failing in that he surely would not be prevented from purchasing in outstanding titles, or removing clouds on his title. Had he been a tenant holding under another claiming title, and had he purchased at the tax sale as from Bonham, as he did, such purchase by him would not have affected the title of his landlord, but would have inured to his benefit.

This case is distinguishable from the case of *McMinn* v. *Whelan,* 27 Cal. 300, as in that case the purchaser of the tax title was in possession, claiming the title to the land. Here appellee was in possession, but claimed no title in himself,

but that it was in the general government. In that case the court held that it was the duty of the person in possession, claiming title, to pay the taxes, and when he purchased it in for taxes, he but paid them and discharged his duty. Conceding the correctness of the rule announced in that case, it does not govern this, as the facts are materially different.

The judgment of the court below is affirmed.

*Judgment affirmed.*