MARSHALL H. ALWORTH v. J. FRED GORDON.[1]

December 3, 1900.

Nos. 12,276—(104).

**G. S. 1894, § 6118—Action by Person Entitled to Demised Premises.**

G. S. 1894, § 6118, relating to restitution of lands unlawfully detained, construed, and *held* that, while proceedings authorized by it are not a substitute for an action of ejectment, yet it gives the remedy to any party entitled to the possession of the demised premises, whether he be the

[1] Reported in 84 N. W. 454.

lessor or his grantee, or someone claiming under him, against a party in possession who is or has been a lessee thereof, or who claims under such lessee.

## Tenancy from Month to Month.

The mere payment of one month's rent, with nothing further said or done, does not create a tenancy from month to month.

## Notice to Quit.

A notice to quit only a part of the demised premises, where the whole thereof are held under one lease, is insufficient to terminate the tenancy. Substantial, not technical, accuracy is required in a notice to quit. Rule applied, and *held* that the notice in this case was sufficient.

## Written Instrument—Identity of Subject-Matter for the Jury.

Ordinarily the construction of written instruments is a question for the court, but where the identity of the subject-matter of a document, or its construction, depends upon collateral facts and extrinsic circumstances, the inferences to be drawn from them should be left to the jury, with proper instructions, as was done in this case.

## Service of Notice to Quit.

As a general rule, any mode of serving a notice to quit is sufficient, where it can be traced to the hands of the party for whom it was intended in due time. Whenever the service upon the party in person is practicable, it should be the mode adopted, but in the absence of the tenant the notice may and should be served in the manner best calculated to reach him.

## Service by Mail.

Service of the notice by mail, so as to cast upon the tenant the risk of receiving it, is not authorized; yet, if such mode of service is adopted, and it is actually received by the tenant within the required time, it is sufficient.

## When Action for Restitution May Be Brought.

Proceedings against a tenant for restitution of the demised premises may be maintained at any time during three years next after the expiration of the leasehold estate.

Action in the municipal court of Duluth for restitution of demised premises. The case was tried before Edson, J., and a jury, which rendered a verdict in favor of plaintiff. From a judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Roger S. Powell,* for appellant.

The conventional relation of landlord and tenant did not exist. G. S. 1894, § 6118, was not intended as a substitute for the action of ejectment, nor to afford means of enforcing agreements to surrender possession where that relation does not exist. Steele v. Bond, 28 Minn. 267. The complaint shows that there was no convention between Alworth and Gordon. If the relation existed between them at all, it was not conventional, but existed by operation of law. 12 Enc. Pl & Pr. 870. Plaintiff's remedy, if any, was ejectment. Defendant by agreement had ceased to hold for a fixed term, and was on March 10, 1900, a tenant at will. Sanford v. Johnson, 24 Minn. 172. If that were so by the conveyance from Mann to plaintiff, the tenancy at will was terminated, and subsequent to the mailing of the notice to quit, to-wit, on April 2, 1900, Gordon became Alworth's tenant by paying him rent for April. A tenancy at will is terminated by alienation of the fee. Howard v. Merriam, 5 Cush. 563; Lash v. Ames, 171 Mass. 487; Seavey v. Cloudman, 90 Me. 536. There is no allegation in the complaint that defendant was notified or had notice of the transfer to plaintiff. This was a fact to be proved, and must have been alleged to state a cause of action, even in ejectment. While attornment does not obtain in Minnesota, notice as a substitute for it does obtain, and is necessary before any proceeding for dispossessing the tenant can be set on foot by the alienee of the fee. Farley v. Thompson, 15 Mass. 18; Jones v. Rigby, 41 Minn. 530. The same principles would be applicable in a proceeding summarily to dispossess a tenant. Furlong v. Leary, 8 Cush. 409; Taylor, L. & T. § 442; Burden v. Thayer, 3 Metc. (Mass.) 76; Baldwin v. Walker, 21 Conn. 168. A notice to quit a part only of the premises is void. 1 Washburn, Real Prop. 641; Taylor, L. & T. § 483; 1 Wood, L. & T. § 41; 2 Greenleaf, Ev. § 323; Grace v. Michaud, 50 Minn. 139, 141.

The notice to quit was not personally served, but was mailed to defendant, who did not know plaintiff's signature. This service was not in accordance with G. S. 1894, §§ 5215, 5218; Spencer v. Haug, 45 Minn. 231. If these sections are inapplicable, there is no prescribed mode of giving notice, and on this theory the service is equally insufficient. 16 Am. & Eng. Enc. 789. When a statute

requires service of a notice on an individual, it means personal service unless some other service is specified or indicated. Rathbun v. Acker, 18 Barb. 393; McDermott v. Board, 25 Barb. 635; City v. Goebel, 32 Mo. 295; State v. Jacobs, 2 Jones L. (N. C.) 52; Moyer v. Cook, 12 Wis. 372. The sufficiency of the written notice was a question for the court. A purchaser from the lessor before obtaining the legal title cannot give a valid notice to quit. Reeder v. Sayre, 70 N. Y. 180. Before the notice could be effective, Alworth must not only have purchased, but must already have acquired the legal title, and Gordon must have had notice of the fact. Howard v. Merriam, supra; Nason v. Best, 17 Kan. 408.

*J. L. Washburn* and *W. D. Bailey*, for respondent.

START, C. J.

This is an action brought in the municipal court of the city of Duluth, under G. S. 1894, § 6118, for the restitution of the demised premises, described in the complaint. Judgment for the plaintiff for a restitution of the premises, from which the defendant appealed.

The evidence tended to establish these facts: On March 30, 1895, the then owner leased the premises to the defendant for one year from the first day of May then next following, for the stipulated rent of $90 per month, payable in advance on the first day of each month during the entire term. The defendant occupied the premises under the lease until September, 1898, at which time the parties entered into an agreement whereby the defendant was to vacate the premises on thirty days' notice, and pay a monthly rent of only $70, instead of $90, as stipulated in the original lease. On March 10, 1900, the premises were conveyed to the plaintiff, of which fact the defendant had notice on or prior to March 27, and was notified that he should thereafter pay rent to the plaintiff. On March 30, 1900, the plaintiff sent by mail a notice, signed by him and directed to the defendant, which was received by him the next day, and was in these words:

"On and after May 1, 1900, we desire the room known as 306 Trust-Company Building, intermediate floor, now used and occupied by you, and you are hereby notified to vacate the said premises at or before that time."

The defendant paid to the plaintiff the rent for April, 1900, on the second day of that month, which was accepted by the plaintiff. The premises were described in the lease as

"Room numbered 1 and storeroom in basement in the building known as the Duluth Trust Company Building, situate on lot 7, block 52, Central division of Duluth, St. Louis county, Minnesota; the said room known and designated as No. 1 on the intermediate floor, and storeroom in basement of said building."

The room designated in the lease as No. 1 was the main room, and was occupied and used by the defendant as his store, wherein he carried on the wall-paper and decorating business, and conducted an art store. The other room named in the lease was a small, dark room in the basement, immediately under the main room, and was used in connection with the defendant's business, in which to store paints, varnishes, and mouldings. The number over the door to the defendant's store was, "306 West Superior Street." This number was also applicable to the east half of the Trust Company Building.

The trial court submitted to the jury the question whether, in view of the relation of the two rooms to each other, and the use to which they were put by the defendant in carrying on his business, the description of the demised premises in the notice to quit was such as fairly to apprise the defendant that the plaintiff's purpose in giving the notice was to terminate the lease as to the whole of the premises, and not as to a part of them. And the jury were instructed in this connection that, if the notice did fairly apprise the defendant that it was the plaintiff's purpose to terminate the lease as to the whole of the premises, it was sufficient; but, if the notice in fact related only to a part of the demised premises, it was insufficient, and the defendant was entitled to a verdict. The defendant excepted to the charge of the court as to the sufficiency of the notice to quit, and also to the refusal of the court to instruct the jury that before they could find for the plaintiff they must find that, before the receipt of the notice to quit, the defendant "had information, of a character so that he would have a right to rely upon it, not only that plaintiff had purchased the premises, but that he had already acquired the legal title thereto."

81 M.—29

1. The defendant claims that the complaint and the evidence both show that the conventional relation of landlord and tenant never existed between the parties to this action, and therefore the plaintiff cannot maintain it.   This presents the question whether the grantee of a lessor is entitled to the remedy provided by the statute relating to forcible entries and unlawful detainers, or must he resort to an action of ejectment to recover the possession of the demised premises, when wrongfully withheld by the lessee?   The statute (G. S. 1894, § 6118) answers the question, the here material provisions of which are these:

"When any person holds over any lands or tenements   *   *   * after the termination of the time for which they are demised or let to him, or to the person under whom he holds possession, or contrary to the conditions or covenants of the lease or agreement under which he holds,   *   *   *   or when any tenant at will holds over after the determination of any such estate by notice to quit, in all such cases the party entitled to possession may make complaint thereof to any justice of the peace."

So much of the statute as we have quoted is substantially a copy of the statute of Massachusetts on the same subject, and was construed by the courts of that state before it was enacted in Minnesota.   Howard v. Merriam, 5 Cush. 563.   In the case cited, Chief Justice SHAW stated the manifest meaning of the statute in these words, at page 583:

"The last 'consideration respects the person, who is entitled to have this summary process.   From the act being sometimes called the landlord and tenant act, and from occasional expressions used in the cases, it has been supposed, that the relation of landlord and tenant must subsist, and that no one but the lessor could have this remedy.   But this is clearly settled otherwise by the statute, which provides, 'that the person entitled to the premises may be restored to the possession.'   In case of alienation, therefore, though there is no relation of landlord and tenant between the alienee and the tenant at will, yet this process may be maintained."

While proceedings under the statute in question are not a substitute for the action of ejectment, yet the statute gives the remedy to any party entitled to the possession of the premises, whether he be the lessor or his grantee, or some one claiming under him against

a party in possession who is or has been a lessee thereof, or who claims under such lessee. It is sufficient if the possession of the defendant commenced as lessee, or that he holds under one whose possession so commenced, and that he holds over without right against any person entitled to possession, whether he be the original lessor or not. Howard v. Merriam, supra; Hart v. Bouton, 152 Mass. 440, 25 N. E. 714.

The case of Steele v. Bond, 28 Minn. 267, 9 N. W. 772, relied upon by the defendant, is not opposed to this conclusion. On the contrary, it supports the construction of the statute which we have adopted. That case was one where the form of the contract was a lease, but it was intended by the parties to secure the payment of a money demand; and the court held the relation of the parties was in fact that of mortgagor and mortgagee, and not that of landlord and tenant, and further that the statute did not afford a remedy in cases where the latter relation "does not exist or has not existed as the foundation of the lessees' possession." But the court did not hold that the defendant must have sustained that relation to the plaintiff; for it is the character of the defendant's possession at its inception, or that of the person under whom he claims, and not the relation between the parties when the action is brought, that determines whether it can be maintained.

2. It is also claimed on behalf of the defendant that the alleged agreement between the lessor and the defendant whereby he was to quit the premises on thirty days' notice made him a tenant at will, which was terminated by the lessor's conveyance of the premises to the plaintiff; therefore the defendant became the plaintiff's tenant by the payment to him of one month's rent after the notice to quit was given. Conceding this proposition, without so deciding, it does not help the defendant; for if the relation of landlord and tenant was created by paying rent for one single month, and nothing further was said or done, the term would be for one month only, and not from month to month, and would expire on May 1. There is a slight conflict in the evidence on the question whether the defendant agreed to vacate the premises on thirty days' notice. It is immaterial whether he so agreed or not; for, if he was a tenant from year to year under the terms of the original lease, the notice to quit, if

sufficient, determined the tenancy on the first day of May, the date fixed in the notice for the termination of the tenancy, and also the end of the year, reckoning from the commencement of the tenancy. Hunter v. Frost, 47 Minn. 1, 49 N. W. 327.

3. This brings us to the question of the sufficiency of the notice. The defendant claims that it was a notice to quit only a part of the premises; hence it was void. It is true that a notice to quit only a part of the demised premises, when the whole are held under one lease, is insufficient to terminate the tenancy; and the trial court so instructed the jury. It is also true that the description of the premises in the lease and notice was not technically the same. But we must construe the notice in connection with the oral evidence, and consider the question in a practical and common-sense way; for substantial, not technical, accuracy is all that is required in a notice to quit, given for the purpose of determining a tenancy. Wade, Notice, § 638; 9 Enc. Pl. & Pr. 57. So construing the notice, in connection with the facts which the oral evidence tended to establish, and which the jury, by their verdict, must have found to be true, we are of the opinion that it was intended to include the whole, not a part, of the demised premises; that the defendant must have so understood it; and that it was sufficient. The demised premises were the defendant's place of business, and the notice designated the substantial part thereof by number. The small room in the basement was a mere adjunct thereto. The trial court properly submitted the question of the sufficiency of the description of the premises in the notice to the jury. Ordinarily the construction of written instruments is a question of law for the court, but where, as in this case, the identity of the subject-matter of a document, or its construction, depends upon collateral facts or extrinsic circumstances, the inferences to be drawn from them should be left to the jury, with proper instructions, as was done in this case.

The further objection is made to the notice that it was served by mail. The statute (G. S. 1894, § 5873) providing for the termination of leases at will by notice to quit does not direct the manner of serving the notice. Nor does the statute (sections 5213–5218) relating to service of notices in civil actions apply to the service of a notice to quit. It is impracticable to lay down any specific rule in advance

as to the manner of serving such a notice which will be applicable to all cases. As a general rule, any manner of serving the notice is sufficient, when it can be traced to the hands of the party for whom it was intended in due time. Whenever service upon the party in person is practicable, it should be the mode adopted; but, in the absence of the tenant, the notice may and should be served in the manner best calculated to reach him. Wade, Notice, § 640; 2 Taylor L. & T. § 484; Walker v. Sharpe, 103 Mass. 154. While the plaintiff in this case was not authorized to serve the notice by mail, so as to cast upon the defendant the risk of receiving it, yet, if the notice was delivered to and received by him within the required time, it is immaterial whether it was delivered to him by the postman or any other agency; for the essential thing is that he received the notice in due time. When the plaintiff selected the mail as the agency for delivering the notice to the defendant, he took the risk of its coming into his hands in due time. We hold the service of the notice good in this case, upon the sole ground that it was actually delivered to the defendant within the required time.

The defendant also assigns as error the refusal of the court to give his requested instruction as to his knowledge of the conveyance of the demised premises to the plaintiff at the time he received the notice to quit. His own testimony upon this point justifies no other conclusion except that he did have such knowledge; hence it was not error for the court to refuse to give the request.

4. The only other alleged error meriting special consideration is the claim that the defendant had been in the possession of the premises for more than three years next before the commencement of this action; hence the plaintiff, by reason of G. S. 1894, § 6119, was not entitled to a restitution of the premises. Such was the rule before the section was amended by Laws 1881 (Ex. Sess.) c. 9, § 2, but it is not now the law. Proceedings against a tenant for restitution of leased premises may now be maintained at any time during three years next after the expiration of the leasehold estate. Brown v. Brackett, 26 Minn. 292, 3 N. W. 705; Suchaneck v. Smith, 45 Minn. 26, 47 N. W. 397.

We find no reversible error in the record.

Judgment affirmed.